## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| THERESA NIEBRUGGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-1018 |
| ) | |
| KING'S MEDICAL GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

## O R D E R

This matter is now before the Court on Defendant's Motion to Stay Litigation and Compel Arbitration. For the reasons set forth below, the Motion [#12] is DENIED.

## JURISDICTION

This action arises in part under the Fair Labor Standards Act (FLSA). This Court therefore has jurisdiction based on 28 U.S.C. § 1331. This Court also has jurisdiction of the claim arising under the Illinois Minimum Wage Act based on supplemental jurisdiction under 28 U.S.C. § 1367.

## BACKGROUND

Plaintiff, Theresa Niebrugge ("Niebrugge"), was employed by Defendant, King's Medical Group ("KMG"), from March 20, 2000, until October 18, 2007. Niebrugge alleges that she was not paid for all of the hours that she worked and was not paid the proper rate for the overtime hours that she worked.

During the course of Niebrugge's employment with KMG, at least two distinct

versions of the employee handbook were in place; the 2001 handbook applied at the time of her hire, and the 2007 version is cited by KMG as being controlling for this case. The language used in the arbitration sections of the 2001 and 2007 handbooks is significantly different.

KMG argues that both versions of the employee handbook mandate binding arbitration for employee dispute resolution. Niebrugge argues that said language in both versions of the employee manual merely provides arbitration as an option for employees. Niebrugge also argues that KMG did not give her notice of a substantial change in company policy between the 2001 and 2007 versions of the handbook.

On January 15, 2008, Niebrugge brought this suit against KMG to recover her allegedly withheld wages. KMG has moved to stay litigation and compel arbitration. The matter is fully briefed, and this Order follows.

**LEGAL STANDARD**

An arbitration agreement should be treated in the same manner as a contract. Kresock v. Bankers Trust Co., 21 F.3d 176, 178 (7th Cir. 1994). If there is no contractual relationship between the parties, then no enforceable arbitration clause exists. Schacht v. Beacon Ins. Co., 742 F.2d 386, 390 (7th Cir. 1984).

This Court applies Illinois law when determining whether a valid agreement to arbitrate was created between KMG and Niebrugge, because all the relevant events took place in Illinois. Koveleskie v. SBC Capital Markets, Inc., 167 F.3d 361, 366-67 (7th Cir. 1999). Illinois law states that "[a]mbiguous contractual language is generally construed against the drafter of the language." Duldulao v. Saint Mary of Nazareth Hosp. Center, 505

N.E.2d 314, 320 (Ill. 1987); see also Weiland Tool & Mfg. Co. v. Whitney, 251 N.E.2d 242, 248 (Ill. 1969), Cedar Park Cemetery Ass'n, Inc. v. Village of Calumet Park, 75 N.E.2d 874, 879 (Ill. 1947). Consequently, this Court will review the alleged binding arbitration agreement in the light most favorable to Niebrugge.

## DISCUSSION

This Court recognizes that "the overwhelming majority of courts considering the issue have held that an employee handbook may, under proper circumstances, be contractually binding." Duldulao v. Saint Mary of Nazareth Hosp. Center, 505 N.E.2d 314, 317 (Ill. 1987). Illinois law states that an "employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present." Duldulao, 505 N.E.2d at 318. These requirements are as follows:

> First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement.

Id. If KMG satisfies all three Duldulao requirements, then a contract is formed and the policies within the handbook will be binding. However, if any of the requirements is not fulfilled, then the handbook provisions are not legally enforceable. The third prong is not in contention in the instant case; Niebrugge only challenges whether KMG has fulfilled the first two requirements–clear offer and proper dissemination.

**I.     "Clear and Unmistakable"**

<u>2001 Version of Employee Handbook</u>

The 2001 employee handbook that Defendant relies on is a far cry from a model of clarity or textbook drafting. In its Reply to Plaintiff's Response, KMG argues that "Plaintiff has been bound by an arbitration provision, in some form, since her hire with Defendant." Reply p. 1. In actuality, Section 503 of the 2001 version of KMG's employee handbook reads, "any regular employee *may* use the arbitration procedure after exhausting the complaint procedure." Defendant's Exhibit C (emphasis added). No language in this section indicates that arbitration is binding or mandatory, much less informs an employee that he or she is waiving any rights by working at KMG.

The Supreme Court has stated that an agreement to arbitrate statutory claims must be "clear and unmistakable." <u>Wright v. Universal Maritime Servs. Corp.</u>, 525 U.S. 70, 80 (1998); *see also* <u>Melena v. Anheuser-Busch, Inc.</u>, 847 N.E.2d 99, 105 (Ill. 2006). The 2001 wording does not meet this requirement; instead, it appears to be an outright statement that arbitration is one option that is available to employees. At the very least, this provision is subject to more than one objectively reasonable interpretation, so Niebrugge's interpretation deserves deference.

KMG offers <u>Oblix v. Winiecki</u>, 374 F.3d 488 (7th Cir. 2004), in support of its position. That formulation of an arbitration agreement used definitive language such as "any dispute or controversy . . . shall be resolved exclusively by binding arbitration." <u>Oblix</u>, 374 F.3d at 490. The expression at issue in <u>Oblix</u> clearly notifies the employee that he or she will be subject to arbitration for dispute resolution. If KMG had more carefully drafted the arbitration section of its employee handbook, then perhaps the 2001 version could be

deemed binding. As it is written, however, this Court must reject KMG's argument.

<u>2007 Version of Employee Handbook</u>

By contrast, the 2007 version of the employee handbook, presents a clear expression of KMG's policy on dispute resolution. It reads, in part, that "[p]roblems, disputes, or claims not resolved through the preceding problem resolution steps are subject to final and binding arbitration." Defendant's Exhibit A. The section further informs the employee that "[t]he decision or award of the Arbitrator made under these rules is exclusive, final, and binding on both parties, their beneficiaries, executors, administrators, successors, and assigns." Id. The next sentence warns that "[i]f you choose to use the arbitration process to resolve a problem, you will be expected to share the cost of the arbitration proceeding with KMG." Id.

The 2007 formulation represents a significant departure from the 2001 version of KMG's arbitration section. Phrases like "subject to final and binding arbitration" and "exclusive, final, and binding" in the 2007 version of the handbook provide sufficient warning under <u>Wright</u> and <u>Melena</u> that an employee is waiving certain rights. The 2007 version is unmistakably clear on the subject of arbitration, despite Niebrugge's refusal to heed context clues. Niebrugge argues that KMG's use of the word "choose" is an indication that arbitration is still merely an option for employees. It is apparent to this Court that "choose" in this context refers to nothing more than the fact that an employee may decide whether he or she wishes to pursue resolution of a problem beyond the in-house process that KMG provides.

Similarly, this Court is unpersuaded by Niebrugge's argument that the 2007 version was not a contract and did not create legal rights. Niebrugge references the disclaimer at

the end of the electronic Employee Acknowledgement form that reads "I understand that this handbook is not a contract of employment or a legal document." Defendant's Exhibit B. It appears clear to this Court that this language, taken in context, is a reference to earlier paragraphs that discuss KMG's policy of at-will employment; the disclaimer merely reiterates that point. KMG's 2007 version of the arbitration provision passes the "clear and unmistakable" test.

## II.     Mode of Dissemination

Niebrugge also challenges whether KMG's method of disseminating the 2007 version of the employee handbook was adequate. KMG's dissemination must satisfy the requirement from Duldulao that "the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer." Duldulao, 505 N.E.2d at 318.

Niebrugge's argument that she did not have enough time to read the 2007 handbook is without merit. An employee can "consent[] to arbitration by signing the form or by manifesting assent in another way, such as by performance of the contract. That the [employee] did not read or understand the arbitration clause does not prevent the [employee] from consenting to it." Melena, 847 N.E.2d at 106 (internal quotation marks and citation omitted). Niebrugge registered her assent to the new handbook by completing the click-through electronic acknowledgment and continuing to work for KMG.

Nevertheless, KMG's method of dissemination may still fail the Duldulao test if Niebrugge assented to the new policy without being provided notice of the altered arbitration provision. On January 22, 2001, Niebrugge signed a handbook receipt that reads, in pertinent part, "I further understand it [handbook] may be amended at any time.

In that case, changes will be communicated to me." Defendant's Exhibit D. Niebrugge's electronic Employee Acknowledgement for the 2007 handbook version also reads, in pertinent part, "I understand that I will be told about any handbook changes." Defendant's Exhibit B. In both versions of the employee handbook, KMG promises Niebrugge that she will be notified of changes to the handbook. A notice by KMG informing Niebrugge that a new handbook is in effect does not, by itself, necessarily satisfy the obligations that KMG itself created by including such language in the manuals.

KMG cannot have it both ways; if the employee handbook creates contractual obligations, then KMG must perform its share of those obligations. In her affidavit, Niebrugge states that she never received any information about the addition of, or signed any specific agreement to be bound by, a mandatory arbitration policy. Discovery is necessary to determine whether KMG provided Niebrugge with any notice of the significant change to the language in the arbitration section. Without further information, it is not appropriate for this Court to grant KMG's Motion to Stay Litigation and Compel Arbitration.

### III.    Consideration for 2007 Handbook

Having already denied KMG's Motion on other grounds, it is not necessary to engage in a discussion of Niebrugge's consideration argument. However, if discovery shows that Niebrugge was notified of the specific changes to KMG's arbitration policy, then it would be necessary to address the issue of consideration for the 2007 handbook. Niebrugge argues that if this Court finds a binding arbitration agreement is in place, then the 2001 version should be controlling.

Niebrugge's reliance on Doyle v. Holy Cross Hosp., 708 N.E.2d 1140 (Ill. 1999), is misplaced. Niebrugge cites Doyle as forbidding an employer from ever unilaterally altering

a handbook to the detriment of an employee unless there is new consideration that goes beyond merely continuing one's employment there. However, Niebrugge omits an important portion of the question being decided by the court in Doyle.[1] The Illinois court states that the issue was "whether the terms of the contract so formed may be altered unilaterally by the employer to an employee's disadvantage *and in the absence of a reservation of the right by the employer to make unilateral changes.*" Id. at 1142 (emphasis added). The decision in Doyle turned on the fact that there was no reservation of such a right by the hospital. Id.

KMG, on the other hand, expressly retained the right to make unilateral changes. Section 101 ("Changes in Policy") of the 2001 handbook reads, "Since our business is constantly changing, we expressly reserve the right to change any of our policies, including those covered here, at any time." Additionally, the 2001 Handbook Receipt and Acknowledgement that Niebrugge signed reads, "I further understand it [handbook] may be amended at any time." Defendant's Exhibit D. The 2007 Handbook Employee Acknowledgment also provides that "KMG may add new policies to the handbook as well as replace, change, or cancel existing policies." Defendant's Exhibit B. Consequently, KMG's situation is inapposite to that of the hospital in Doyle. Because KMG retained the right to make unilateral changes, Niebrugge's consideration argument is without merit; no new consideration is required when the contract allows KMG to make changes.

---

[1] KMG also neglects to address this important distinction in either of its replies. In fact, KMG provides erroneous citations in relation to Doyle and also incorrectly attributes quotations from another case to it.

**CONCLUSION**

For the reasons set forth herein, Defendant's Motion to Stay Litigation and Compel Arbitration [#12] is DENIED without prejudice to renewal after discovery.

ENTERED this 31st day of July, 2008.

<u>s/ Michael M. Mihm</u>
Michael M. Mihm
United States District Judge